**Faye L. VANDERGRIFF**

and

**Misty Dawn Vandergriff,
Plaintiffs/Appellants,**

v.

**MISSOURI PACIFIC RAILROAD,
Defendant/Respondent.**

No. 70738.

Supreme Court of Missouri,
En Banc.

April 18, 1989.

Rehearing Denied May 16, 1989.

Daniel T. Rabbitt, T. Michael Ward, St. Louis, and L. Dwayne Hackworth, Piedmont, for plaintiffs/appellants.

Kim Roger Luther, St. Louis, for defendant/respondent.

WELLIVER, Judge.

This is an appeal from a jury verdict for defendant Missouri Pacific Railroad following the death of Donald Vandergriff in a collision with a Missouri Pacific locomotive. The Court of Appeals, Eastern District, reversed. The Court of Appeals' opinion held that plaintiff was entitled to the same presumption with reference to flasher lights that is accorded by § 389.990 RSMo 1986, relating to auditory or bell warnings.

We granted transfer to examine the presumption indulged by the Court of Appeals. Since we decide as if on original appeal, Mo. Const. art. V, § 10, we will be required to deal with other issues raised by the appeal before addressing the question of indulging the presumption. We affirm the trial court.

## I

Donald Vandergriff was killed on July 7, 1983, in a collision between the truck he was driving and a Missouri Pacific freight train. Plaintiffs, the wife and daughter of the decedent, brought this action alleging negligence in maintaining the warning flashers at the crossing and in maintaining an unusually dangerous crossing. At the close of trial, the jury returned a verdict for the defendant, finding plaintiff 100% at fault.

During trial, plaintiffs offered evidence suggesting the flashers might not have been working on the day of the accident. This evidence related to incidents where the flashers were either working with no train on the tracks, or not working while a train was passing. These incidents were said to be in a period of several days before the accident and up to the day before the accident.

Defendant offered evidence supporting the fact that the flashers were working. A train headed in the opposite direction passed the crossing between fifteen to twenty-five minutes before the accident and its engineer testified that the flashers were working. Additional evidence revealed a total of 11 trains had crossed the crossing, seven on the day before the accident, four on the day of the accident. None had reported any problems with the flashers. The flashers had been inspected two days prior to the accident, and found to be working properly. There was no direct evidence offered showing that the railroad had notice that the flashers were not working. Witnesses who saw the decedent's truck approaching the crossing testified he was traveling between 60 and 70 miles per hour. Those on the train involved in the accident could not testify whether the flashers were working or not, that the control box was destroyed in the accident, and they sounded the statutory required audio warning.

## II

### The Default Judgment

Defendant's registered agent was served on August 29, 1983. Defendant failed to answer or seek a time extension until October 4, 1983. The time for responsive pleadings had ended September 28, 1983. On October 4, 1983, defendant entered an appearance, and sought an extension of time to file pleadings. This motion was granted, and defendant was given until October 26, 1983.

On October 13, 1983, the trial court rescinded its order permitting the extension of time, and entered an Interlocutory Judgment of Default. Following entry of default, defendant moved to set aside the default, which was granted on October 28, 1983.

In 1983, Rule 74.05 provided:

Such judgment may, for good cause shown, be set aside at any time before the damages are assessed or final judgment rendered, upon such terms as shall be just.

Appellate courts give broad discretion to the trial judge, and are more prone to interfere when a request to set aside a default has been denied than when it has been granted. *Volvo Finance North America, Inc. v. Raja*, 754 S.W.2d 955, 957 (Mo.App. 1988). We will only overturn the ruling of the trial court if an abuse of discretion is shown, and we are mindful of the well established principle that default judgments are not favored in the law. *Robyn Marketing, Inc. v. Fjelstead*, 693 S.W.2d 239, 241 (Mo.App.1985). In the present case we have a defendant trying to defend, and showing up, though late, before judgment had been entered. We find no evidence that the trial judge abused his discretion in setting aside the default judgment.

## III

### The Closing Argument

Plaintiff's next point on appeal concerns the operation of the flashers and involves a statement by defendant in closing argument. He said:

But, ladies and gentlemen, in this case the burden is upon the plaintiffs to show you or to prove to you that on the date of the collision the fact that those flashers, as they alleged, they have to show *that those flashers weren't operating immediately prior to the accident.* (Emphasis added.)

■ Plaintiffs claim this is contrary to the third paragraph of Instruction No. 5. We do not agree. The trial judge is in the best position to judge the effect of and the propriety of closing argument, and the trial judge is given broad discretion in ruling on matters dealing with closing argument. *Wadlow By Wadlow v. Lindner Homes, Inc.,* 722 S.W.2d 621, 632 (Mo.App.1986). The verdict directing instruction required the plaintiffs to show the signals at the crossing did not give adequate warning at the time of the collision. The plaintiffs in effect argued on several occasions that they had met the burden of showing that the warning signals gave inadequate warning.

There is no showing that defendant's line of argument was contrary to law or that plaintiffs were prejudiced thereby. The trial court did not err in permitting the argument.

## IV

### Juror Nondisclosure

Plaintiff's next point on appeal involves the nondisclosure by one of the jurors of two past lawsuits. There was a personal injury lawsuit filed against the juror when he was a minor, in 1971, fifteen years before his selection as a juror in the present case. The second suit was with the juror as plaintiff, and involved a house the juror bought and his belief there were misrepresentations made during the sale. This suit was in 1979, and it was dismissed in 1983.

The Court examined the juror, and the juror testified he had simply forgotten the earlier suits, that he had no axe to grind as between the plaintiffs and defendant, that he had answered as truthfully as possible during voir dire, that he had no special desire to get on the jury, and that he had decided the case as submitted on the evidence and instructions. The juror had signed the verdict in favor of the defendant.

■ In the absence of intentional unreasonable nondisclosure, the relevant inquiry becomes whether under the circumstances the juror's presence on the jury did or may have influenced the verdict so as to prejudice the party seeking a new trial. The plaintiffs have the burden of demonstrating this prejudice, which they have not done. The record of the proceedings, both during voir dire and on examination following discovery of the lawsuits, give no indication the plaintiffs suffered prejudice by the juror's presence on the jury. The determination is left to the able hands of the trial judge, and absent a showing of an abuse of discretion we will not disturb his ruling. *Wilford v. Barnes Hospital,* 736 S.W.2d 33, 36 (Mo. banc 1987).

## V

### The Submission of the Case—The Flasher Presumption

Instruction No. 5, as submitted by plaintiff, stated in part:

In your verdict you must assess a percentage of fault to defendant Missouri Pacific Railroad Company whether or not plaintiff's decedent was partly at fault if you believe: ...

Second, the crossing where the collision occurred was unusually dangerous at the time of the death of Donald R. Vandergriff, and

Third, defendant Missouri Pacific Railroad Company failed to provide an adequate and timely warning of approaching trains at said crossing, ...

The trial court refused to submit Plaintiff's instruction A, which read in part:

In your verdict you must assess a percentage of fault to Defendant Missouri Pacific Railroad Company whether or not plaintiffs' decedent was partially at fault if you believe:

. . . .

Second, defendant Missouri Pacific Railroad Company's flashing red lights at said crossing were inoperable . . .

■ The Court of Appeals held that the trial court erred in refusing to submit Plaintiff's instruction A because defendant failed to rebut the presumption that decedent would have stopped if the flasher had been operating. In other words, the Court of Appeals was willing to indulge the same presumption in a visual warning case that the legislature had authorized in audio warning (bell and whistle) cases, which is that an automobile operator is presumed to have heeded the audio warning signals if they were sounded. *Borrson v. Missouri–Kansas–Texas Railroad Co.*, 172 S.W.2d 835, 845 (Mo.1943).

The statute on which the audible presumption relies is § 389.990, RSMo 1986. This statute requires that a bell or whistle be sounded at least eighty rods from the place where the railroad crosses any traveled public road. There is no such comparable statute requiring visual warning signals, and there therefore is no statutory basis for a visual presumption.

The cases cited by plaintiff, *Borrson v. Missouri–Kansas–Texas Railroad Company*, 172 S.W.2d 835 (Mo.1943), and *Rosenbalm v. Thompson*, 148 S.W.2d 830 (Mo. App.1941), both deal with the statutory auditory warning signals and not to visual warnings. The Court of Appeals erroneously indulged the visual warning presumption.

The standard for determining liability based upon a nonfunctional flasher is found in *Grace v. Smith*, 277 S.W.2d 503 (Mo.1955). It states

if you further find and believe from the evidence that the defendant, Wabash Railroad Company, negligently and carelessly permitted said automatic warning light to be and remain out of order and repair, and that same would not operate, and that said automatic warning light

had been in such condition for a sufficient length of time for said defendant, by the exercise of ordinary care on its part, to have discovered that said automatic signal light was in such condition, and to have repaired the same prior to said collision.

*Id*, at 507.

■ Plaintiff's instruction A, by stating only that "defendant Missouri Pacific Railroad Company's flashing red lights at said crossing were inoperable", fails to consider whether defendant knew of the defective flasher and if so, whether defendant had sufficient time to have remedied the condition before the accident. The trial court was correct in refusing to submit Plaintiff's instruction A.

Paragraph 3 of Plaintiff's verdict director Instruction No. 5 submitted that defendant railroad was guilty of negligence if "defendant Missouri Pacific Railroad Company failed to provide an adequate and timely warning of approaching trains at said crossing . . ." There was testimony from the operators of the train that they had sounded the whistle warning. Under circumstances such as here, where there was both contradicted evidence as to audio warnings and contradicted evidence as to flasher or visual warnings, paragraph 3 of Instruction No. 5 in effect gave plaintiffs the benefit of the statutory presumption as to both. As to the flashers the language of the instruction requires the jury to find no more than that the crossing failed to provide a timely warning of approaching trains in that the flashers were not operating. In effect, plaintiffs got a more favorable instruction than to which they were entitled, and the jury still found plaintiff's decedent to be 100% at fault.

Plaintiffs next contend that the trial court erred in submitting Instruction No. 7 because there was no substantial evidence on the record to submit that defendant's electric signal device was operable; the instruction sought a verdict on a statutory defense not pleaded; the instruction employed misleading terminology thereby giving the jury a roving commission to speculatively reach a verdict; and the instruction was argumentative and required a detailed finding of fact in violation of Rule 70.02(a).

Instruction No. 7, as submitted by defendant, stated in part:

In your verdict you must assess a percentage of fault to plaintiff's decedent, Donald R. Vandergriff, whether or not defendant Missouri Pacific Railroad Company was partly at fault, if you believe:

First, either:

Plaintiff's decedent drove at an excessive speed, or

Plaintiff's decedent *failed to stop his tractor-trailer within fifty feet but not less than fifteen feet from the nearest rail of the railroad crossing at a time when a clearly visible electric signal device was giving warning of the immediate approach of a railroad train* ... (Emphasis added.)

An issue submitted in an instruction must be supported by substantial evidence from which the jury reasonably could find such issue. *Gathright v. Pendegraft,* 433 S.W.2d 299, 313 (Mo.1968). "In determining the propriety of an instruction, evidence must be viewed in the light most favorable to the submission of the instruction, and a party is entitled to an instruction upon any theory supported by the evidence." *Hopkins v. Goose Creek Land Co., Inc.,* 673 S.W.2d 465, 467 (Mo.App. 1984).

■ There was ample evidence, when viewed in the light most favorable to the submission, to support Defendant's Instruction 7. The defendant's evidence at trial showed the flashers to be working as little as fifteen to twenty-five minutes before the accident, and that the flashers had been inspected and found operating two days before. A total of eleven trains had passed the crossing the day before the accident and the day of the accident, and none reported problems with the flashers. No signal indicating problems had been received in the Little Rock office.

■ As to plaintiff's contention that Defendant's Instruction 7 did not conform to the pleadings, it is refuted by the record. The trial court granted defendant leave to amend its pleadings to include the omitted statutory defense. Amendments to petitions, even during trial, are quite usual and are authorized by court rule. *Hanes v. Bacon Sales Company,* 602 S.W.2d 50, 53 (Mo.App.1980); Rule 55.33(b).

Plaintiff next contends that the words used in Defendant's Instruction 7 are misleading, argumentative, gave the jury a roving commission, and required a detailed finding of fact. Specifically, plaintiff complains of the terms "clearly visible electric signal".

■ These words were taken directly from the statute, § 300.295, RSMo 1986, which provides:

[w]henever any person driving a vehicle approaches a railroad grade crossing under any of the circumstances stated in this section, the driver of such vehicle shall stop within fifty feet but not less than fifteen feet from the nearest rail of such railroad, and shall not proceed until he can do so safely. The foregoing requirements shall apply when:

(1) A clearly visible electric or mechanical signal device gives warning of the immediate approach of a railroad train:
...

In cases involving a statutory violation, it is generally sufficient to frame an instruction substantially in the language of the statute unless the statutory language requires construction. *Bayne v. Jenkins,* 593 S.W.2d 519, 531 (Mo. banc 1980).

The language used in this instruction was simple, brief, impartial, free from argument, and did not require detailed evidentiary findings. Rule 70.02(a). The instruction was stated in the language of the statute and did not require construction of the statute. The trial court did not err in giving Defendant's instruction 7.

The judgment of the trial court is affirmed.

BILLINGS, C.J., and BLACKMAR, ROBERTSON, HIGGINS and COVINGTON, JJ., concur.

RENDLEN, J., concurs in result.